IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 21-300 |
| RANDY FRASINELLI | |

**SENTENICNG MEMORANDUM**

AND NOW, comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Jeffrey R. Bengel, Assistant United States Attorney for said district, and respectfully files this sentencing memorandum.

The Paycheck Protection Program (PPP) was created to help businesses maintain payroll and retain workers during the COVID-19 pandemic.  The defendant, Randy Frasinelli, did not have workers.  But he did have expensive taste.  Over two months in the spring and summer of 2020, Frasinelli filed four brazenly fraudulent applications for PPP loans, citing the need to retain more than 100 workers.  As a result of those applications, he received more than $2.5 million in PPP funds—then promptly spent that money on items including luxury cars, a villa in Mexico, an African safari, firearms, works of art, precious metals, watches, and personal investments.

By February 2021, the Federal Bureau of Investigation (FBI), Internal Revenue Service (IRS), and United States Marshals Service (USMS) had developed considerable evidence that Frasinelli had defrauded the PPP program.  After a federal search warrant was executed at his home, and eighteen federal seizure warrants were executed against items traceable to his fraud, Frasinelli retained counsel who began discussing a resolution with the government.  As part of those discussions, Frasinelli represented to have almost $1.5 million in a Fidelity investment account, with which he could pay restitution.  The FBI, IRS, and USMS began an investigation

1

into the source of this money, and quickly determined that it was traceable to a fifth fraudulent PPP loan—this time in the amount of $1,340,000—that Frasinelli had sought after authorities had executed the warrant at his home.  Following this discovery, in April 2021, Frasinelli was charged by a federal complaint alleging that he had committed bank fraud and money laundering.

Frasinelli was arrested, appeared before a federal magistrate judge, and released under a bond order that required him to refrain from committing additional crimes.  Then, in June 2021, investigators determined that Frasinelli had filed *yet another* fraudulent application for PPP funds—this time in May 2021, while on bond in a federal case.  Frasinelli was charged in a second federal complaint, alleging a new bank fraud.  Following a detention hearing, Frasinelli was released on bond.  In July 2021, he was charged by a grand jury in the Western District of Pennsylvania with six counts of bank fraud, in violation of 18 U.S.C. § 1344, and fifteen counts of money laundering, in violation of 18 U.S.C. § 1957.

In August 2022, Frasinelli pled guilty to one count of bank fraud and one count of money laundering.  The Court has determined that his applicable guideline range is 63 to 78 months of imprisonment.  Frasinelli committed an exceptionally greedy fraud, then attempted to trick federal investigators into accepting more fraudulently obtained money as restitution.  Even after having his home searched by federal agents, obtaining counsel, being arrested, appearing before a federal magistrate judge, and being placed on bond, Frasinelli continued to commit crimes, thus requiring a second federal arrest.  This is not a case where, as Frasinelli now argues, a non-custodial sentence is sufficient because he is "not a criminal-type."  *See* Def.'s Sentencing Memo (Doc. No. 108) at 7.  Frasinelli's conduct in this case was brazenly, unrepentantly criminal in nature.  The United States asks the Court to recognize that fact with a sentence at the high-end of Frasinelli's advisory guideline range.

**ARGUMENT**

The PPP was designed to help small businesses weather the economic effects of the COVID-19 pandemic without laying off their workers. To obtain a loan through the PPP, an applicant needed to provide truthful information about its average monthly payroll and the number of its employees. It also needed to represent, through an authorized representative, that it would use the loan funds on certain authorized business expenses, like payroll costs, interest on mortgages, and utilities. Businesses seeking PPP loans submitted their application materials directly to a financial institution that had agreed to participate in the program as a lender. If the business's application was approved, the lender could extend a loan with a face value of 2.5 times the applicant's average monthly payroll. Loans spent for permissible purposes like the maintenance of payroll could later be forgiven by the lender.

Between May and July 2020, Frasinelli submitted four PPP applications, in the name of four different but similarly named companies. As summarized in the table below, each application falsely claimed that Frasinelli employed multiple—sometimes dozens of—employees, and had an average monthly payroll of thousands of dollars. As a result of these applications, he received more than $2.5 million in PPP funds.

| Date | Company | Amount | Employees | Average Monthly Payroll |
|---|---|---|---|---|
| May 24, 2020 | Grant-Williams Associates | $207,082 | 6 | $82,833 |
| June 9, 2020 | Grant-Williams Global | $525,000 | 12 | $210,000 |
| June 26, 2020 | Grant-Williams Associates Corp. | $509,000 | 23 | $203,600 |
| July 22, 2020 | Grant-Williams International | $1,304,000 | 65 | $521,600 |

Frasinelli now attributes this conduct to a then-undiagnosed mental health issue, which he says inhibited his ability to control himself. *See* Def.'s Sentencing Memo at 5. This claim is inconsistent with the nature of the evidence. During this period, which spanned two months, Frasinelli submitted four separate applications for PPP funds. As the applications were granted, the lies that they contained got bigger. Frasinelli started by claiming six employees and seeking a loan in the amount of $207,082; two months later, he was claiming 65 employees and seeking a loan in the amount of $1,304,000. Moreover, in support of each application, Frasinelli was required to submit supporting documentation, like records purporting to be ADP payroll reports and state or federal tax filings. Fabricating these documents no doubt took time. So did corresponding directly with the lenders and addressing their follow-up questions, as Frasinelli sometimes did. Frasinelli did not acquire his first $2.5 million dollars in PPP funds through a momentary failure of judgment or lack of impulse control. He did so by a pattern of fraudulent conduct spanning at least two months.

Frasinelli and those writing in his support make a number of claims about his intentions in seeking the loan funds. *See, e.g.*, Def.'s Objections to PSR (Doc. No. 92) (Frasinelli did not intend to spend the money on himself and intended to pay back the loans); *see* Aug. 26, 2022 Letter (Doc. No. 108-1) at 7–8 (suggesting that Frasinelli pursued to the loans to "survive," likely donated some proceeds to charity, and intended to pay them back); M.F. Letter (Doc. No. 108-1) at 10 (loans pursued to provide for his family during a time of economic hardship). Quite simply, the bank records sharply contradict those claims. With the fraudulently acquired loan proceeds, Frasinelli purchased, among other things:

- Six vehicles, including a Ford Mustang Shelby, two Mercedes SUVs, a BMW 6 Series, a Land Rover Defender, and a Porsche Panamera, with a collective purchase price of more than $260,000;

4

- A villa in Tulum, Mexico, with a total purchase price of $338,850, toward which Frasinelli paid more than $150,000 in PPP funds;

- Ten watches and watch accessories, purchased for a total price of more than $68,000;

- More than $95,000 worth of precious metals, including gold bars and various kinds of silver coins;

- A clock with a purchase price of more than $22,000; and,

- Six bronze and clay works of art, for a total purchase price of more than $24,000.

These are not the purchases of someone trying to make ends meet. Nor was the $41,250 that Frasinelli paid for him and his daughter to take a high-end, eleven-day safari in East Africa, where he received special recognition from the tour company as a "very high level USA cyber security guy with presidential level clearance at CIA level." Finally, he purchased more than $1.8 million worth of shares in two separate Fidelity investment accounts (although later transferred some funds back out). When Frasinelli finally agreed to the liquidation and forfeiture of those assets in November 2022, they were worth just $334,000.

    Having identified this spending, federal investigators obtained a search warrant for the home where Frasinelli was living and eighteen seizure warrants for property traceable to the fraud, including the two Fidelity investment accounts. These were executed on February 4, 2021. Speaking with agents on the phone, Frasinelli indicated that his companies had employees, but failed to name any of the more than 100 claimed on his various applications. He also claimed to have business records stored on a laptop that was located, not at his home, but at some other unspecified place.

    After the search Frasinelli retained counsel who, after receiving a reverse proffer concerning the evidence against Frasinelli, began plea negotiations with the government. In the course of these negotiations, Frasinelli signaled through counsel that he had significant assets at his disposal, which could be used to repay the $2.5 million that he had received in the summer of

2020. As support for that claim, Frasinelli provided a screenshot through his counsel, which contained the information below.

```
All Accounts
$2,468,459.77
AS OF 04/06/2021 11:29 AM ET

Investment Accounts              $2,466,535.52
INDIVIDUAL - TOD                   $976,639.14
    1654                        $1,345.57 (+0.14%)

INDIVIDUAL                       $1,489,896.38
    0346                        $6,568.25 (+0.54%)

Savings, Checking, and Spending Accounts
INDIVIDUAL - TOD                     $1,924.25
    1655

◆ Add Non-Fidelity Accounts
```

Some of that information related to the two previously restrained Fidelity accounts, ending in 1654 and 1655. But the screenshot also contained information about a third Fidelity account, ending in 0346, with a value of almost $1.5 million. An investigation by the USMS, FBI, and IRS soon determined that that money was traceable to a new fraudulent PPP application dating to March 2, 2021—this time, claiming 53 employees and seeking $1,340,000 in the name of Grant-Williams International. In effect, Frasinelli was attempting to use stolen money to repay stolen money, while claiming credit for making restitution. He showed no consideration whatsoever for the attorney advocating on his behalf, who could have unknowingly facilitated his fraud.

The government obtained a seizure warrant for this third Fidelity account—finally liquidated with Frasinelli's consent in November 2022, with a value of only about $524,000—and a criminal complaint for Frasinelli. *See* Apr. 14, 2021 Compl., Magistrate Case No. 21-813. Frasinelli was arrested, appeared before United States Magistrate Judge Maureen P. Kelly, and was released on bond. The first condition of his release required that he refrain from further violations of federal, state, or local law while on release. *See* Apr. 15, 2021 Bond Order (Doc. No.

13) at 1. But within weeks, Frasinelli had violated that condition by filing *yet another* fraudulent PPP loan application—this time, seeking $525,000 in the name of Grant-Williams Global. The government swore out a second criminal complaint, and arrested Frasinelli for a second time. *See* June 17, 2021 Compl., Magistrate Case No. 21-1292. Although the government sought his detention, Frasinelli was again released on conditions. He was subsequently charged by a grand jury and pled guilty. He is scheduled to be sentenced on March 29, 2023.

Frasinelli's guideline range of 63 to 78 months results from a straight-forward application of the sentencing guidelines. It is based on enhancements for loss (exceeding $3.5 million dollars based on the face value of the loans), receiving gross-receipts of more than $1 million from a financial institution (satisfied in this case), and money laundering (amply supported by any one of fifteen money laundering counts). It also gives Frasinelli a two-level (but not three-level) reduction for acceptance of responsibility. What his guideline range does not account for, however, is the fact that his fraud continued after agents had searched his home and seized the proceeds of his fraud, after he had retained counsel, after he had been arrested, and after he had been released on bond by a federal magistrate judge. It also does not account for his shameless attempt to fool the government into accepting stolen money as restitution, while using his attorney as an unknowing accessory to his ongoing fraud. These actions betray a lack of respect for the law and warrant a just punishment. To take them into account, the Court should impose a sentence at the top of Frasinelli's applicable guideline range.

In his sentencing memorandum, Frasinelli requests that the Court impose a sentence of time served. *See* Def.'s Sentencing Memo at 6. That request rests on two claims about Frasinelli's character and the nature of the offense. On the one hand, Frasinelli asks the Court to see him as a successful and well-credentialed businessman, who is scrupulously honest and has led a fully law-

abiding life.  *See, e.g.*, *id.* at 7; Aug. 26, 2022 Letter; M.F. Letter.  On the other hand, he asks the Court to conclude, in essence, that he simply could not help but steal more than $3.8 million from the PPP, because of a mental health condition diagnosed for the first time in connection with this case.  *See, e.g.*, Def.'s Sentencing Memo at 5.  There are a number of problems with Frasinelli's argument.  First, the Court need not simply accept Frasinelli's claim that a mental health condition made him unable to control himself with respect to the PPP.  Indeed, Frasinelli's lack of a criminal record and other aspects of his biography reflect a level of self-control that he now denies possessing.  More importantly, however, Frasinelli's attempt to make his crime one of uncontrollable impulse is flatly contradicted by the record in this case.  To obtain more than $3.8 million in PPP funds, Frasinelli had to file multiple fraudulent applications, increase their value over time, forge various official documents, and persevere in his conduct over many months.  Frasinelli's fraud was premediated and deliberate.

There is a simpler explanation for Frasinelli's conduct: he committed a lucrative fraud out of greed.  Whether as an end in themselves or as a reflection of the way he saw himself, Frasinelli liked having expensive things.  When he learned about the PPP, he saw an opportunity to acquire a large amount of money and spend it on things he wanted, like property in Mexico, expensive vehicles, and international vacations.  He was also willing to lie in order to get what he wanted and try to escape the consequences.  He lied to the financial institutions in order to get the loans; to the federal agents that interviewed him on the day of the search; to his first attorney, about the source of the money that he sought to "repay" to the government; and to the government, about that same money, in an attempt to negotiate a favorable resolution to this matter.  Respectfully, the government submits that the Court should be wary of relying on any factual statements that Frasinelli makes while seeking a more lenient sentence.

The Court is charged with imposing a sentence that is "sufficient, but not greater than necessary" to account for the seriousness of the offense, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(2). Frasinelli's conduct in this case has been deceptive, sustained, and outrageous. The appropriate sentence for a multi-million-dollar fraud, motivated by greed and committed over many months, is at least one within the guideline range. When, as here, that fraud also involved an attempt to disrupt the prosecution by fooling the government into accepting stolen money as restitution, and criminal conduct that continued after an arrest and appearance in federal court, the appropriate sentence is one at the top of the applicable guideline range. In order to promote respect for the law and provide just punishment, the United States respectfully requests that the Court impose that sentence in this case.

        Respectfully submitted,

        TROY RIVETTI
        Acting United States Attorney

By:  */s/ Jeffrey R. Bengel*
      JEFFREY R. BENGEL
      Assistant U.S. Attorney
      DC ID No. 1016821